778 So.2d 199 (1998)
James Matthew HYDE
v.
STATE.
CR-95-2036.
Court of Criminal Appeals of Alabama.
January 30, 1998.
Rehearing Denied March 20, 1998.
*208 Terry Huffstutler, Guntersville; and David Roadruck, Guntersville, for appellant.
Bill Pryor, atty. gen., and Lindy Beale and Michael Billingsley, asst. attys. gen., for appellee.
BASCHAB, Judge.
The appellant, James Matthew Hyde, was charged with the capital murder of Ernest Andrew Whitten. The murder was made capital 1) because it occurred during a burglary, see ง 13A-5-40(a)(4), Ala.Code 1975; 2) because Whitten was a grand jury witness, see ง 13A-5-40(a)(14), Ala.Code 1975; 3) because Whitten had been subpoenaed to testify at the trial of Larry Whitehead, see ง 13A-5-40(a)(14), Ala. Code 1975; and 4) because Whitten was a police officer who was killed as a result of a job-related act, ง 13A-5-40(a)(5), Ala. Code 1975.
The evidence showed that the appellant was a close friend of Larry Whitehead. Whitehead was employed by Hudson Foods, Inc., but he rarely went to work. Instead, he or one of his friends punched the time clock, clocking him in and out, and he was paid as if he had worked. The appellant was caught clocking Whitehead in and out, and Detective Andrew Whitten of the Albertville Police Department investigated the incident. As a result of the investigation, Whitehead was arrested and charged with first-degree theft. Whitten testified before the grand jury that indicted Whitehead, and he was subpoenaed to testify at Whitehead's trial, which was scheduled to begin on January 30, 1995. Whitten was shot on January 24, 1995, and on January 25, 1995, he died from injuries he sustained in the shooting.
The appellant admitted his involvement in the crime in a statement he gave the police. That statement revealed the following:
On January 24, 1995, the appellant, Whitehead, and Stephen Brookshire drove to Whitten's house. While Whitehead and Brookshire remained in the vehicle, the appellant opened an outer door, entered an enclosed porch, and approached the door to the remainder of the house. Whitten came to the door, and the appellant, using a gun he had in a jacket pocket, shot him once in the abdominal area. When his gun jammed, the appellant returned to the car and the three men left. The appellant later discarded the jacket and the hat he had been wearing. Whitehead or one of his friends discarded the gun.
Stephen Brookshire testified for the State at the appellant's trial, and his story corroborated the appellant's confession. In addition, he testified that he and the appellant knew that Whitten was a witness against Whitehead and that Whitten was killed to prevent him from testifying at Whitehead's trial.
Larry Whitehead testified at trial for the defense. He stated that he killed Whitten and that Brookshire and the appellant had nothing to do with it. In fact, he testified that, when they were in the car on the day of the murder, Brookshire and *209 the appellant thought he was going to a drug dealer's house to buy drugs.
During the guilt phase of the trial, but before the trial court charged the jury, the State abandoned the count in the indictment that made the murder capital because the victim was a police officer. The jury found the appellant guilty of capital murder on three basesโthat the murder was committed during a burglary, that the victim was a grand jury witness, and that the victim was going to testify at the trial against Whitehead. By a vote of 7 to 5, the jury recommended a sentence of life imprisonment without the possibility of parole. The trial court overrode the jury's recommendation and sentenced the appellant to death. This appeal followed.
The appellant raises several issues on appeal that he did not raise in the trial court. However, because this case involves the death penalty, we are required to examine the record for plain error. Rule 45A, Ala. R.App. P., provides as follows:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
We have stated the following regarding plain error review:
"The Alabama Supreme Court has adopted federal case law defining plain error, holding that `"[p]lain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings,' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983) (quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981))."
Haney v. State, 603 So.2d 368, 392 (Ala.Cr. App.1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993). To rise to the level of plain error, the claimed error must not only seriously affect a defendant's "substantial rights," but it must also have an unfair prejudicial impact on the jury's deliberations. United States v. Young, 470 U.S. 1, 16-17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1, 13 n. 14 (1985). Finally, a failure to object will weigh heavily against a claim of prejudice. Williams v. State, 601 So.2d 1062, 1066 (Ala.Cr.App. 1991), aff'd, 662 So.2d 929 (Ala.), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). See also Brooks v. State, 695 So.2d 176 (Ala.Cr.App.1996), aff'd, 695 So.2d 184 (Ala.), cert. denied, 522 U.S. 893, 118 S.Ct. 233, 139 L.Ed.2d 164 (1997).

I
The appellant first argues that the trial court erred in refusing to instruct the jury on the lesser included offense of intentional murder. We disagree.
"In Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the United States Supreme Court held that the sentence of death could not be imposed after a jury verdict of guilt of a capital offense when the jury was precluded from considering a verdict of guilt of a lesser included noncapital offense, provided that the evidence would have supported such a verdict. Subsequently, in Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the Supreme Court clarified its decision in Beck, supra, to require that only when the evidence warrants such an instruction must a lesser included offense instruction be given. In so holding, the Court upheld the constitutionality of the following Alabama standard as applied in capital cases: `a lesser included offense instruction should be given if "there is any reasonable theory from the evidence which would support the position."' Hopper, 456 U.S. at 611, 102 *210 S.Ct. at 2053 (quoting Fulghum v. State, 291 Ala. 71, 75, 277 So.2d 886, 890 (1973))."
Ex parte Julius, 455 So.2d 984, 986 (Ala. 1984).
"[A]n accused is not always entitled to an instruction on a particular offense even though this offense is included in the offense for which he is charged:
"`A person accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Wiggins v. State, 491 So.2d 1046 (Ala.Cr.App. 1986); Chavers v. State, 361 So.2d 1106 (Ala.1978); Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973).... A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense or (2) the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala.App. 108, 180 So.2d 279, cert. denied, 278 Ala. 710, 180 So.2d 282 (1965).... Section 13A-1-9(b) provides, "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
"`"The `safer' practice is to charge upon all degrees of homicide: `[I]t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.' Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948)."
"`Phelps v. State, 435 So.2d 158, 163 (Ala.Cr.App.1983).'"
Holladay v. State, 549 So.2d 122, 129 (Ala. Cr.App.1988), aff'd, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989).
As we set forth in Parts II and III of this opinion, the State presented sufficient evidence to support the capital murder convictions for the murder of a witness and murder committed during a burglary. The evidence, including the appellant's confession, showed that the appellant killed Whitten because he was a witness against Whitehead. In addition, the evidence showed that the appellant unlawfully entered Whitten's house and that he intentionally and unlawfully caused a bullet to enter Whitten's house, which ultimately caused Whitten's death. Based on this evidence, there was no rational basis for convicting the appellant of the lesser included offense of intentional murder, and a charge on that offense would have served only to confuse or mislead the jury. If the jury believed the State's evidence, it would have been justified in finding the appellant guilty of the murder of a witness and murder committed during a burglary. If the jury believed the evidence presented by the defense, it would have been justified in finding the appellant not guilty. There was no reasonable theory under the evidence presented at the trial that would have justified a finding that the appellant was guilty of intentional murder. Thus, the trial court properly denied the appellant's request for a charge on the lesser included offense of intentional murder.

II
The appellant's second argument is that he was improperly convicted of two counts of capital murder based on ง 13A-5-40(a)(14), Ala.Code 1975. Specifically, he argues that being charged with two counts of capital murder for the murder of the same witness violated his right to be free from being twice placed in jeopardy for the same conduct. Further, he alleges that "[a] juror deciding a man's fate certainly might be influenced by how many *211 convictions he had." Finally, he contends that the trial court considered the fact that he had two convictions relating to the killing of a witness in deciding to sentence him to death by electrocution. Because he did not raise these arguments in the trial court, we must review them under the plain error rule.
The United States Supreme Court has explained the purpose of the Double Jeopardy Clause as follows:
"It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."
North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). In this case, the appellant was not prosecuted a second time for the same offense after an acquittal or after a conviction. Therefore, we must determine only whether the appellant is being punished multiple times for the same offense or is receiving a greater punishment than the legislature intended. Because this case involved the death penalty, the appellant cannot be punished twice for the same offense. He "has only been sentenced to die once, and indeed, can only be put to death once." Ex parte McWilliams, 640 So.2d 1015, 1022 (Ala.1993). Furthermore, even if the appellant's right to be free from double jeopardy was violated by the two convictions for the murder of a single witness, any error is harmless. If one conviction for the murder of a witness was void, the convictions for the other count of murder of a witness and for murder during a burglary would remain, and either conviction would be sufficient to support a death sentence. Id.
The appellant's argument that, during the sentencing phase, the jurors might have been influenced by the number of convictions is refuted by the fact that the jury recommended a sentence of life imprisonment without parole. His argument that the trial court, in sentencing him, considered the fact that he had multiple convictions is also without merit. In its statement of the facts of the case, the trial court simply indicated that the appellant had been found guilty of two counts of murdering a witness. However, the trial court could not have, and in fact did not, consider these convictions as aggravating circumstances in determining the appellant's punishment. Therefore, there is no indication in the trial court's sentencing order that the trial court improperly considered the two convictions in sentencing the appellant to death by electrocution. For the foregoing reasons, the appellant's argument is without merit.

III
The appellant's third argument is that the facts of the case preclude a conviction for the capital offense of murder committed during a burglary, see ง 13A-5-40(a)(4), Ala.Code 1975. First, he argues that there was no "entry" as required by the burglary statute. Second, because both the murder and the burglary were accomplished by the same act, he argues that he could not be convicted of two offenses for that one act. Finally, he argues that using the same act as the basis for elevating a crime from murder to capital murder is contrary to Alabama death penalty law and the Eighth Amendment to the United States Constitution.
Section 13A-7-5(a), Ala.Code 1975, defines burglary as follows:
"(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains in a dwelling with intent to commit a crime therein, and, if, in effecting entry *212 or while in the dwelling or in immediate flight therefrom, he or another participant in the crime:
"(1) Is armed with explosives or a deadly weapon; or
"(2) Causes physical injury to any person who is not a participant in the crime; or
"(3) Uses or threatens the immediate use of a dangerous instrument."
The testimony at trial showed that the appellant stepped onto a wooden porch, opened a glass door, and entered an enclosed porch area of Whitten's house. In his confession, the appellant admitted that he went into a room, which was the enclosed porch area, and approached the inner door that opened into the remainder of Whitten's house. The photographs depict the outer wooden porch, the door from the outside to the enclosed porch, the enclosed porch, and the inner door. The photographs corroborate the appellant's description of his entry into Whitten's house, and they show that he had to enter the room to commit the crime in the manner he described. From these facts, it is clear that the appellant entered Whitten's dwelling.
Furthermore, the evidence also showed that the appellant shot a bullet into Whitten's house, causing Whitten's death. In Westbrook v. State, 687 So.2d 216 (Ala.Cr.App.1996), we discussed those situations in which the entry of an object into a building may satisfy the entry element of the burglary statute:
"`The appellant contends that the state's evidence was insufficient because, he says, the state failed to prove that the appellant entered the building. The law in Alabama regarding this issue has been summarized as follows:
"`"Prior to the effective date of the Alabama Criminal Code (Code of Alabama 1975, Title 13A) both a breaking and an entry were essential elements of the crime of burglary, but a breaking has been eliminated as an essential element by งง 13A-7-5, 13A-7-6 and 13A-7-7. To constitute an entry, there must be a penetration of the space within the building by some part of the body of the defendant, or by an instrument inserted for the purpose of perpetrating a felony in the building. In Walker v. State, 63 Ala. 49, 51-51 (1879), it was held:
"`"`When one instrument is employed to break, and is without capacity to aid otherwise than by opening a way of entry, and another instrument must be used, or the instrument used in the breaking must be used in ... some other way or manner to consummate the criminal intent, the intrusion of the instrument is not, of itself, an entry.
"`"`When entry is made by means of an instrument, it must be used for the purpose of effecting the felony, and not merely gaining entrance for the defendant. Accordingly, the act of prying open a door with an iron bar does not constitute an entry, as it is not used for the purpose of committing a felony therein, but merely of breaking.'
"`To the same effect is Robinson v. State, 45 Ala.App. 74, 78, 224 So.2d 675 (1969), where it is stated:
"`"`The evidence that the door "was pried open and the lock was busted with some type of instrument" did not show an entry into the building.'"
"`Perry v. State, 407 So.2d 183, 185 (Ala.Cr.App.1981). See Pack v. State, 461 So.2d 910 (Ala.Cr.App.1984); see also People v. Tragni, 113 Misc.2d 852, 449 N.Y.S.2d 923 (1982).'"
687 So.2d at 217. Clearly, the appellant fired the bullet into the house with the intent to commit a felony, namely murder, therein. Therefore, the entry of the bullet into the house constituted an entry under the burglary statute.
Thus, both the appellant's entry into the enclosed porch area and his causing the bullet to enter Whitten's house *213 constitute entries under the burglary statute. The evidence also showed that the appellant's entry was unlawful because he did not have permission to enter the house. In addition, the appellant was armed with a gun, which is a deadly weapon, and he entered the house with the intent to commit murder. Therefore, the evidence was sufficient to support the appellant's burglary/murder conviction.
The appellant's remaining challenges to his burglary/murder conviction are also unfounded. He erroneously argues that he was improperly convicted of the two crimes of murder and burglary for the same act, in violation of his right to be free from double jeopardy. However, he was convicted of capital murder, because the murder was committed during a burglary, and capital murder is a single offense. Because he was not convicted of two separate offenses, this argument is without merit.
Finally, he erroneously argues that the trial court erred in allowing the murder to be elevated to capital murder based on the same facts that constituted the murder itself. Because the State showed that the appellant committed the murder during a burglary of Whitten's house, the murder was properly elevated to, and the appellant was properly convicted of, the capital offense of burglary/murder. See ง 13A-5-40(a)(4), Ala.Code 1975.

IV
The appellant's fourth argument is that the trial court allowed improper testimony by Whitten's family and friends, including their recommendations that he receive the death sentence. For the reasons stated below, we find that the testimony was not improper.

A
Edsel Whitten, the victim's father, and Tommy Cole, the chief of the Albertville Police Department, testified at the appellant's sentencing hearing. Whitten testified that he recommended, on behalf of his son and every law enforcement officer, that the appellant receive the death sentence. Cole recommended, as a police officer and as the chief investigating officer in this case, that the appellant be sentenced to death. At the sentencing hearing before the trial court, the prosecutor moved to "resubmit" the evidence presented at the sentencing hearing before the jury.
The appellant contends that the testimony of Edsel Whitten and Chief Cole was improper victim impact evidence and thus violated the principles set forth in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In Payne, the United States Supreme Court determined that victim impact evidence was admissible for consideration by the jury during the sentencing phase of a capital case. "[A] prosecutor may present and argue evidence relating to the victim and the impact of the victim's death on the victim's family in the penalty phase of a capital trial." McNair v. State, 653 So.2d 320, 331 (Ala.Cr.App.1992), extended after remand, 653 So.2d 343 (1993), opinion after remand, 653 So.2d 347, opinion after second remand, 653 So.2d 351, aff'd, 653 So.2d 353 (Ala.1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995). The State concedes that Payne does not authorize testimony regarding the defendant, the crime, and the appropriate punishment, and that the testimony of Whitten and Cole was improper. However, the State argues that the remarks made by Cole and Whitten as to the punishment appropriate in this case were harmless beyond a reasonable doubt. We agree.
In this case, the jury recommended, by a vote of seven to five, a sentence of life imprisonment without the possibility of parole. Thus, it is clear that the testimony of Whitten and Cole did not have a prejudicial effect on the jury. The appellant attempts to bootstrap his argument, however, by claiming that the testimony of these two witnesses was intended as much *214 for the court as for the jury, and that the success of that testimony was evidenced by the judicial override and the ultimate imposition of the death sentence. However, a review of the sentencing order shows that the trial court did not consider the testimony of Whitten or Cole, or any other inappropriate factors, in sentencing the appellant to death. In fact, the sentencing order states that "[t]he Court is fully aware that the murder of a police officer or the murder of a witness are not aggravating circumstances as provided by law. Only those aggravating circumstances enumerated in ง 13A-5-49, Code of Alabama have been considered by the Court in reaching this decision."
Finally, we presume that the trial court disregarded any inadmissible evidence and improper factors in sentencing. Sockwell v. State, 675 So.2d 4, 36 (Ala.Cr. App.1993), aff'd, 675 So.2d 38 (Ala.1995), cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996). See also Lightbourne v. Dugger, 829 F.2d 1012 (11th Cir.1987), cert. denied, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988); Whisenhant v. State, 555 So.2d 219, 229 (Ala. Crim.App.1988), aff'd, 555 So.2d 235 (Ala. 1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990). Because there is no evidence that the court considered the testimony of Whitten and Cole when it overrode the jury's recommendation and sentenced the appellant to death, this argument is without merit.

B
The appellant also argues that the trial court erred by allowing testimony from the victim's family that he says was not relevant to guilt or innocence to be offered at the guilt phase of his trial. He argues that Edsel Whitten's testimony about the feelings of his wife and surviving son was improper, and that Tommy Cole's testimony about the Whitten family and its involvement in law enforcement was also improper. He also argues that the victim's brother, Mike Whitten, was allowed to testify about how long the Whitten family had been involved in law enforcement, about how close the victim had been to his family, and how his brother's death had affected him.
"Recently, this Court examined the issue of victim impact evidence in Ex parte Rieber, 663 So.2d 999 (Ala.1995). In Rieber, we acknowledged that testimony regarding a murder victim's children was not relevant to the issue of the accused's guilt or innocence and was, thus, inadmissible during the guilt phase of trial; we noted, however, that `a judgment of conviction can be upheld if the record conclusively shows that the admission of the victim impact evidence during the guilt phase of the trial did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant.' 663 So.2d at 1005. After thoroughly reviewing the record of this present case, we conclude that the limited testimony regarding Ms. Brown's infant son and the impact of Ms. Brown's death on her family, and the prosecution's limited references to such evidence, did not operate to deny Land a fair trial or to prejudice his substantial rights. Thus, we find no reversible error as to this issue."
Ex parte Land, 678 So.2d 224, 236 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996).
In Ex parte Rieber, 663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995), the Alabama Supreme Court held as follows:
"We agree with Rieber that Mr. Craig's testimony concerning Ms. Craig's children, their ages, and the status of their custody after the murder was not relevant with respect to the question of his guilt or innocence and, therefore, that it was inadmissible in the guilt phase of the trial. The only issue before the jury during the guilt phase of the trial was whether Rieber had robbed and killed Ms. Craig. However, in Ex parte Crymes, 630 So.2d 125 (Ala.1993), *215 a plurality of this Court held in a capital murder case in which the defendant was sentenced to life-imprisonment without parole that a judgment of conviction can be upheld if the record conclusively shows that the admission of the victim impact evidence during the guilt phase of the trial did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant. See, also, Giles v. State, 632 So.2d 568 (Ala. Crim.App.1992), aff'd, 632 So.2d 577 (Ala.1993), cert. denied, [512] U.S. [1213], 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994); Ex parte Parker, 610 So.2d 1181 (Ala.1992), cert. denied, [509] U.S. [929], 113 S.Ct. 3053, 125 L.Ed.2d 737 (1993); Lawhorn v. State, [581 So.2d 1159 (Ala. Cr.App.1990), aff'd, 581 So.2d 1179 (Ala. 1991)]; Hooks v. State, 534 So.2d 329 (Ala.Crim.App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989); and Ex parte Whisenhant, [555 So.2d 235 (Ala.1989) ], applying a harmless error analysis in death penalty cases. Our review of the record indicates that Rieber's attorneys did not object to Mr. Craig's brief references to Ms. Craig's children or ask him any questions on cross-examination. The trial court clearly instructed the jury that it had to determine, based on all of the evidence, whether Rieber had robbed and killed Ms. Craig. The jury was instructed that it could not find Rieber guilty unless the prosecutor had established his guilt beyond a reasonable doubt. The jury was also instructed not to let sympathy or prejudice affect its verdict. We caution prosecutors that the introduction of victim impact evidence during the guilt phase of a capital murder trial can result in reversible error if the record indicates that it probably distracted the jury and kept it from performing its duty of determining the guilt or innocence of the defendant based on the admissible evidence and the applicable law. However, after examining the record in its entirety, we conclude that the aforementioned portions of Mr. Craig's testimony, although they should not have been permitted, did not operate to deny Rieber a fair trial. It is presumed that jurors do not leave their common sense at the courthouse door. It would elevate form over substance for us to hold, based on the record before us, that Rieber did not receive a fair trial simply because the jurors were told what they probably had already suspectedโthat Ms. Craig was not a `human island,' but a unique individual whose murder had inevitably had a profound impact on her children, spouse, parents, friends, or dependents (paraphrasing a portion of Justice Souter's opinion concurring in the judgment in Payne v. Tennessee, 501 U.S. 808, 838, 111 S.Ct. 2597 [2615-16], 115 L.Ed.2d 720 (1991))."
663 So.2d at 1005-06 (emphasis supplied).
The record shows that Edsel Whitten did not improperly testify about the feelings of Andrew Whitten's mother and brother. Rather, he simply testified about his impressions of the effect of the murder on Andrew Whitten's mother and brother based on his observations of them. Also, Cole simply testified about the Whitten family's involvement with law enforcement and the impact Andrew Whitten's murder had on the law enforcement community. As in Land and Rieber, there is no evidence that the challenged testimony affected the outcome of the trial or otherwise prejudiced a substantial right of the defendant. Ex parte Rieber, 663 So.2d at 1005; Ex parte Crymes, 630 So.2d 125 (Ala.1993). Moreover, like the appellant in Ex parte Rieber, the appellant here did not object to the testimony he now challenges. Thus, our analysis of the appellant's argument must be under the plain error rule. See Rule 45A, Ala. R.App. P. Williams v. State, supra; Brooks v. State, supra. Initially, we presume that the testimony did not improperly affect the jury's decision because the jury recommended a sentence *216 of life imprisonment without the possibility of parole. Crymes, supra. Also, we presume that the trial court ignored any improper evidence in reaching its decision regarding sentencing. Sockwell, supra; Lightbourne, supra; Whisenhant, supra. Because there is no indication that the victim impact evidence affected the outcome of the trial or otherwise prejudiced the appellant, this argument is without merit.

V
The appellant's fifth argument is that the trial court improperly denied him the funds to secure a transcript of the trial of the attorney who represented Larry Whitehead. He was prosecuted for conspiracy to commit capital murder because he allegedly told Whitehead the only way to avoid a conviction and prison sentence in his theft case was to eliminate Whitten as a witness, but he was acquitted. The appellant alleges that the court's ruling denied him his right to cross-examine and impeach the State's witnesses, and he also claims that the transcript would have been useful "for potential mitigation."
At his trial, the appellant argued that the transcript of the attorney's trial was important to show the "pecuniary gain" of the "co-defendants and accomplices" in this case. (R. 50-55). However, on appeal, he raises numerous constitutional grounds in support of his claim. Because the grounds raised on appeal are different from those advanced at trial, this issue was not properly preserved for appellate review. Barnett v. State, 639 So.2d 527 (Ala. Cr.App.1993). Therefore, we must review the appellant's claim under the plain error rule. See Rule 45A, Ala. R.App. P.
We addressed a similar claim and decided it adversely to the appellant in Penn v. State, 539 So.2d 316 (Ala.Cr.App.1986). In Penn, we held:
"The appellant argues that, as an indigent, he was entitled to the `basic tools of a defense or an appeal,' under the authority of Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). According to the appellant, the transcript's value to his defenses was `great' because the transcript was `essential for discovery as well as impeachment purposes.
"This precise issue, however, has been previously decided adversely to the appellant. In Mardis v. State, 423 So.2d 331 (Ala.Cr.App.1982), this court concluded that the trial court's denial of certain pretrial motions was proper, based upon the following reasoning:
"`The defendant claims that the trial court erroneously denied portions of his "motion for discovery" inquiring about the criminal records of, or the immunity promised to, any of the State's witnesses. He also contends that the court erred by not granting his pretrial "petition for transcript for indigent defendant," in which he sought a copy of the trial transcript of his co-defendant James Meeks.
"`Both requests were properly denied. The "petition for transcript for indigent defendant" was a discovery device, as indicated by counsel's statement in brief:
"`At the trial of James Meeks, the State called witnesses to the stand against Mr. Meeks which were in fact the same witnesses called against appellant at his trial. Appellant requested a transcript of said proceedings in order to assist counsel for appellant in preparation of the case against him.'
"Section 12-22-190, Alabama Code 1975, authorizes a free transcript only for a convicted defendant for purposes of appeal. See Mayola v. State, 344 So.2d 818 (Ala. Cr.App.), cert. denied, 344 So.2d 822 (Ala.1977).
"`There is no constitutional right to discovery in a criminal case. Brown v. State, 401 So.2d 213 (Ala.Cr.App.), cert. denied, 401 So.2d 218 (Ala.1981). *217 Furthermore, it is within the trial court's discretion to deny disclosure of material which might impeach the credibility of the State's witnesses, see Oliver v. State, 399 So.2d 941 (Ala.Cr. App.1981); Mack v. State, 375 So.2d 476 (Ala. Cr. App. 1978), affirmed, 375 So.2d 504 (Ala.1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980). The defendant has shown no abuse of discretion here.' Id. at 334.
"Here, as in Mardis, there was no abuse of discretion in the trial court's denial of appellant's request for the funds to obtain a transcript of his co-defendant's trial."
539 So.2d at 317-18 (footnote omitted).
Here, as in Penn and Mardis, the trial court did not abuse its discretion in denying the appellant's request for the funds to obtain a transcript of the attorney's trial.

VI
The appellant's sixth argument is that the State did not prove beyond a reasonable doubt that he knew, at the time of the killing, that Whitten had been a grand jury witness and was subpoenaed to be a trial witness and that he killed Whitten for that reason. Because knowledge is often difficult to prove directly, it may be proved by evidence of acts or conduct of the accused from which knowledge may be inferred. Harper v. State, 594 So.2d 1181 (Ala.1991), cert. denied, 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 248 (1992); Baty v. State, 401 So.2d 308 (Ala.Cr.App.1981); Walker v. State, 356 So.2d 674 (Ala.Cr. App.1977).
"Evidence to prove knowledge or intent is usually circumstantial. It is entitled to the same weight as direct evidence. Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137-38, 99 L.Ed. 150, 166 (1954). The mere fact that evidence is of a circumstantial nature does not make it deficient. Linzy v. State, 455 So.2d 260, 262 (Ala.Cr.App. 1984). Further, such evidence should be reviewed by this court in the light most favorable to the State, Bass v. State, 55 Ala.App. 88, 313 So.2d 208 (1975), and our judgment should not be substituted for that of the jury. Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979)."
P.S. v. State, 565 So.2d 1209, 1212 (Ala.Cr. App.1990).
"`Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.'"
White v. State, 546 So.2d 1014, 1017 (Ala. Cr.App.1989), quoting Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App.1984).
"`[T]he Alabama rule is that circumstantial evidence by itself is often satisfactory proof of the corpus delicti of a murder, if the totality of the facts presented would allow the jury to "reasonably" infer the crime. In such cases the questions of a defendant's guilt must be submitted to the jury for their decision.'"
O'Shields v. State, 689 So.2d 227, 232 (Ala. Cr.App.1996), overruled on other grounds, Cothren v. State, 705 So.2d 849 (Ala.Cr. App.1997) (citations omitted).
The testimony showed that Whitten had investigated the incident at Hudson Foods that had resulted in the arrest and indictment of Whitehead for theft of property. There was also testimony that Whitten had testified before the grand jury which indicted Whitehead and had been subpoenaed to testify at Whitehead's trial. Therefore, Whitten's status as a grand jury witness and as a witness subpoenaed to testify at Whitehead's trial was sufficiently established.
Codefendant Stephen Brookshire testified that he, Whitehead, and the appellant met on the afternoon of January 24, 1995, to "get rid of a witness." Brookshire testified that he knew they were going to kill someone who was a witness against Whitehead because they believed that person *218 could put Whitehead back in prison. However, he did not know who the witness was. On cross-examination, he gave conflicting testimony about whether the appellant was a party to the discussion that afternoon. However, he did testify that the arrangement was for him to drive and for Whitehead and the appellant to shoot and kill the witness. Brookshire further testified that the three men met at his house that evening and discussed their plans. At that time, Whitehead pulled out the gun and told Brookshire and the appellant that "this was what he was going to use, you know, to get rid of the witness."
In his statement to the police, the appellant stated that Whitehead met him at his trailer on the evening of the shooting to discuss what was going to happen. Specifically, Whitehead told him that Whitten was the only one who could send him back to prison and that he wanted the appellant to help stop Whitten from doing so by shooting him.
Finally, the defense presented testimony by Larry Whitehead that the appellant and Brookshire thought they were going to a drug dealer's house and that he, not the appellant, shot Whitten. Questions concerning the credibility of witnesses and the weight to be given to their testimony are for the jury to decide. Zumbado v. State, 615 So.2d 1223 (Ala.Cr.App.1993); Harris v. State, 513 So.2d 79 (Ala.Cr.App.1987). Furthermore, conflicting evidence presents a question for the jury to decide. Read v. State, 686 So.2d 563 (Ala.Cr.App.1996). Through the foregoing testimony, the State presented sufficient evidence from which the jury could have reasonably determined that the appellant knew Whitten was a witness and killed him for that reason. Accordingly, the appellant's argument is without merit.

VII
The appellant's seventh argument is that the trial court improperly imposed a death sentence after the jury recommended a sentence of life imprisonment without the possibility of parole. Specifically, he contends that, in reaching that decision, the trial court improperly considered 1) a presentence report that contained an unwarned and uncounseled interview with the appellant and that also contained unsubstantiated hearsay; 2) a letter requesting death for the appellant; 3) the dismissed capital charge of murdering a law enforcement officer; and 4) the sentencing recommendations of Whitten's relatives. We find no error concerning the testimony of the victim's relatives; this issue is discussed more fully in Part IV of this opinion.
Although the trial court stated in its sentencing order that it was concerned that the offense involved the murder of a law enforcement officer, it indicated that it did not take that concern into consideration in the process of weighing the aggravating and mitigating circumstances. In fact, the trial court noted that the murder of a law enforcement officer and the murder of a witness are not aggravating circumstances recognized by Alabama law, and it stated that it had considered only those aggravating circumstances enumerated in ง 13A-5-49, Ala.Code 1975, in reaching its decision. Moreover, the fact that Whitten was a law enforcement officer was relevant to the court's determination, as set forth below, that the crime was committed to hinder law enforcement functions. Therefore, its comments or observations about the fact that the victim was a police officer and a witness were not improper. Further, there is no indication that the trial court considered those facts as aggravating circumstances in deciding to override the jury's verdict and recommend a sentence of death.
The appellant also argues that the trial court improperly considered portions of the presentence investigation report. Section 13A-5-47(b), Ala.Code 1975, provides for the use of a presentence investigation report:

*219 "Before making the sentence determination, the trial court shall order and receive a written pre-sentence investigation report. The report shall contain the information prescribed by law or court rule for felony cases generally and any additional information specified by the trial court. No part of the report shall be kept confidential, and the parties shall have the right to respond to it and to present evidence to the court about any part of the report which is the subject of factual dispute. The report and any evidence submitted in connection with it shall be made part of the record in the case."
Section 13A-5-45(d) addresses the evidence to be used at the sentencing hearing:[1]
"Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama."
The appellant's argument that the trial court improperly considered the presentence report is without merit. The sentencing order shows that the trial court independently considered and weighed the evidence concerning the aggravating circumstances and the mitigating circumstances; the order does not indicate that the trial court considered any improper evidence in reaching its decision. The appellant's statements to the probation officer did not involve the facts of the case, but they did indicate his remorse concerning the crime. Therefore, the inclusion of those statements was not improper. In addition, the appellant's argument that the report contained improper hearsay evidence is also without merit. The "report itself is an out-of-court statement and is entirely hearsay. However, it is admissible under ง 13A-5-47, Code of Alabama, being specifically called for consideration by the trial court." Thompson v. State, 503 So.2d 871, 880 (Ala.Cr.App.1986), aff'd, 503 So.2d 887 (Ala.), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987). Finally, we presume that the trial court disregarded any improper evidence in sentencing the appellant. Sockwell, supra; Lightbourne, supra; Whisenhant, supra.
The appellant also argues that the trial court improperly considered a letter in which the author expressed his belief that the appellant should be sentenced to death. The sentencing order does not indicate that the trial court considered this letter in sentencing the appellant to death. In fact, nothing in the record indicates that the trial court considered this letter. Again, we presume the trial court disregarded irrelevant evidence and improper factors in sentencing. Sockwell, supra; Lightbourne, supra; Whisenhant, supra. Therefore, we find no indication that the trial court improperly considered the letter in sentencing the appellant to death.
Finally, the appellant contends that the trial court improperly weighed the aggravating and mitigating factors in reaching its decision. First, he contends that the trial court improperly found that the murder was committed to hinder law enforcement functions because on his contention that the State did not prove he knew Whitten was a witness and killed him for that reason. As set forth in Part VI of this opinion, the State did present evidence from which the jury could conclude that, at the time of the murder, the appellant knew Whitten was a witness and killed him for that reason. Therefore, the trial court *220 properly found that the murder was committed to hinder law enforcement functions. Second, he contends that the trial court improperly found as an aggravating factor that he committed the murder during a burglary. For the reasons set forth in Part III of this opinion, this argument is also without merit and the trial court properly found this to be an aggravating circumstance. Finally, he contends that the trial court improperly refused to find several mitigating circumstances, including the alleged domination by Larry Whitehead and the appellant's remorse. The trial court complied with Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978), and its progeny. It allowed the appellant to present all of the mitigating evidence he wanted to present, and it fully considered that evidence in imposing the sentence. "`While Lockett and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.'" Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996) (quoting Bankhead v. State, 585 So.2d 97, 108 (Ala.Cr.App.1989)). See also Carroll v. State, 599 So.2d 1253 (Ala.Cr.App.1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994); Ex parte Harrell, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). Because the trial court allowed the appellant to offer evidence in mitigation and because it considered that evidence, its refusal to find as mitigating factors the appellant's substantial domination by Larry Whitehead and his remorse was proper.

VIII
The appellant's eighth argument is that the trial court's instructions during the guilt phase of his trial were improper.

A
First, the appellant contends that the trial court did not define the term "entry" for the jury and that the jury therefore could properly determine whether he was guilty of burglary/murder. The trial court's instruction on murder during a burglary followed the language of the burglary statute and the instruction on murder committed during a burglary in the first degree suggested in Alabama Pattern Jury Instruction: Criminal. The fact that the trial court followed an accepted pattern jury instruction weighs heavily against any finding of error. Carroll v. State, 599 So.2d 1253 (Ala.Cr.App.1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994); Dill v. State, 600 So.2d 343 (Ala.Cr.App.1991), aff'd, 600 So.2d 372 (Ala.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993); Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991); Ex parte Harrell, supra. The instruction was not misleading or confusing. Therefore, the trial court's charge on murder committed during a burglary was not erroneous.

B
Second, the appellant contends that the trial court erred in not instructing the jury on voluntary intoxication as a defense to specific intent and also in not instructing on manslaughter. Because the appellant did not request these charges, we must review this contention under the plain error rule. See Rule 45A, Ala. R.App. P.
The evidence did not show that the appellant was intoxicated at the time of the murder. There was testimony that the appellant used drugs at some time before the murder. However, although Whitehead testified that he gave the appellant some "crank" on the day of the murder, there is no testimony as to when, if at all, the appellant used drugs on the day of the murder. There is no testimony as to how much "crank," if any, the appellant used on the day of the murder, and there is no indication that the appellant was intoxicated *221 as a result of ingesting drugs or alcohol at the time of the murder. Evidence that the appellant may have used drugs on the day of the murder is not evidence that he was intoxicated at the time of the murder. There was no reasonable theory to support instructions on intoxication or manslaughter. Ex parte Windsor, 683 So.2d 1042 (Ala.1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997). Therefore, we find no error in the trial court's not charging the jury on intoxication and manslaughter.

C
Third, the appellant contends that the trial court erred because it did not give a charge on the level of proof necessary for a finding of guilt based on accomplice testimony or a charge that Stephen Brookshire was in fact an accomplice. The appellant did not request either charge at trial. Therefore, we must review this contention under the plain error rule. See Rule 45A, Ala. R.App. P.
Section 12-21-222, Ala.Code 1975, provides as follows:
"A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Even though the trial court did not instruct the jury that Brookshire was an accomplice, his status as a codefendant was made abundantly clear through his testimony and his arrangement with the State was fully revealed to the jury. The trial court did instruct the jury to look for and to consider the possible bias on the part of a witness. Moreover, although Stephen Brookshire testified against the appellant, the appellant was not convicted solely upon Brookshire's testimony. In addition to the appellant's confession to the police, other witnesses testified about what the appellant told them about the murder. This other evidence corroborated Brookshire's testimony and was sufficient to support the appellant's convictions. Therefore, because the trial court did give an instruction regarding bias and because there was additional corroborating evidence, including the appellant's confession, there was no plain error in the trial court's not charging the jury regarding accomplice testimony.

D
Fourth, the appellant contends that the trial court's instructions lessened the State's burden of proof. First, the appellant challenges the trial court's charge that the jurors had a duty to determine "the truth." This statement was made in the following context:
"All 12 of you, ladies and gentlemen, must agree before you can reach a verdict in the case. Your verdict must be the verdict of each and every juror. Again, you are the sole judges as to the weight that should be given the testimony in the case. My duty is to attempt to define the law to you. Your duty is to determine the facts. I don't want you to think from anything that I have said in this charge that I haveโor otherwiseโ that I haveโthink any one way or another about the facts of the case. You, ladies and gentlemen, take the testimony of the witnesses together with all proper, reasonable inferences therefrom, apply your good common sense, and in an honest and impartial way, determine what you believe to be the truth."
(R. 2291). Taken in context, the trial court's statement was not improper. It was simply an instruction that the jurors should evaluate the credibility of all of the evidence and witnesses in determining the facts and in reaching its decision. It properly summarized the jury's role as the sole factfinder in the case. Therefore, the instruction did not improperly lessen the State's burden of proof.
*222 The appellant also argues that the following instruction on reasonable doubt was flawed:
"Now the phrase `reasonable doubt' that I have used is somewhat self-explanatory. Efforts to define it do not always clarify the term. However, it may help you some to know that a reasonable doubt is not a mere guess or surmise. It is a doubt based on reason and logic and not upon speculation. If, after considering all the evidence in the case, you have an abiding conviction of the truth of the charge, then you are convinced beyond a reasonable doubt and it would be your duty to convict the Defendant.
"The reasonable doubt which entitles an accused to an acquittal is not a mere fanciful, vague, conjectural or speculative doubt, but a reasonable doubt arising from the evidence or from a part of the evidence or from a lack of evidence. And it remains after a careful consideration of the testimony such as reasonable, fair-minded, and conscientious people would entertain under all the circumstances.
"Now, I charge you that the State is not required to convince you of the Defendant's guilt beyond all doubt nor to a mathematical certainty nor beyond a shadow of a doubt but simply beyond a reasonable doubt. But, if, after comparing and considering all the evidence in the case, your minds are left in such a condition that you cannot say that you have an abiding conviction of the Defendant's guilt, then you are not convinced beyond reasonable doubt and the Defendant would be entitled to an acquittal."
Specifically, he argues that the instruction violated his due process rights by lessening the State's burden of proof, thereby violating Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
"In Cage v. Louisiana, the United States Supreme Court found that if the instruction equated `reasonable doubt' to `grave uncertainty' and `actual substantial doubt,' and stated that what was required was `moral certainty,' a reasonable juror could interpret the instruction to allow a lesser degree of proof to convict than that required by the Due Process Clause. It was the use of all three phrases in conjunction with each other that the Supreme Court determined was unconstitutional in Cage. See Gaskins v. McKellar, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991)."
Sockwell v. State, 675 So.2d 4, 23 (Ala.Cr. App.1993). "Use of some but not all of the terminology found offensive in Cage does not automatically constitute reversible error." Taylor v. State, 666 So.2d 36, 56 (Ala.Cr.App.), opinion after remand, 666 So.2d 71 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996) (citations omitted). The instruction given in this case did not equate "reasonable doubt" with "moral certainty," "grave uncertainty," or "actual substantial doubt," which the United States Supreme Court found to be improper in Cage. Taken as a whole, the instruction was not improper; it was not confusing and it did not lessen the State's burden of proof. Taylor, supra. See also, Ex parte McWilliams, 640 So.2d 1015, 1023-24 (Ala.1993). Therefore, the appellant's argument is without merit.

E
Fifth, the appellant contends that the trial court erroneously charged the jury on two counts of the murder of a witness and one count of murder committed during a burglary. For the reasons set forth in Parts II and III of this opinion, this argument is without merit.

IX
In his ninth argument, the appellant, a white male, argues that the prosecutor's unexplained use of a peremptory challenge to remove the only black member of his jury venire violated the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *223 Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), as well as his rights under Alabama law and under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Because the appellant did not object at trial, we must review this issue under the plain error rule. See Rule 45A, Ala. R.App. P.
"`"Under the `plain error' doctrine, as enunciated in Rule 45A, the Court of Criminal Appeals is required to search the record in a death penalty case and notice any error (ruling or omission) of the trial court and to take appropriate action, `whenever such error has or probably has adversely affected the substantial right of the [defendant],' in the same manner as if defendant's counsel had preserved and raised such error for appellate review." Ex parte Johnson, 507 So.2d 1351, 1356 (Ala.1986). For plain error to exist in the Batson context, the record must raise an inference that the state [or the defendant] engaged in "purposeful discrimination" in the exercise of its peremptory challenges. See Ex parte Watkins, 509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).'

"Guthrie v. State, 616 So.2d 913, 914 (Ala.Crim.App.1992) (second bracketed language added [in Rieber])."
Rieber v. State, 663 So.2d 985, 991 (Ala.Cr. App.1994), aff'd, 663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995). See also, Boyd v. State, 715 So.2d 825, 836 (Ala.Cr.App. 1997).
The record reflects that all black veniremembers but one, L.M., were either excused or struck for cause. The State used a peremptory challenge to remove L.M. served as an alternate juror, but he was discharged before the case was submitted to the jury. Although the trial court did not require the State to explain why it struck L.M., there is no indication that the prosecution removed him for an improper reason. L.M. responded during voir dire that he had had an unpleasant experience with two law enforcement officers when he was about 20 years old and that he had mixed feelings about the criminal justice system generally. The fact that L.M. might have had a "chip on his shoulder" regarding the judicial system is a race-neutral reason for removing him from the jury. Zumbado v. State, 615 So.2d 1223 (Ala.Cr.App.1993). L.M. further stated that, although he believed in the death penalty, he did not know if he could actually vote to impose it. "Although a juror's reservations about the death penalty may not be sufficient for a challenge for cause, his view may constitute a reasonable explanation for the exercise of a peremptory strike." Johnson v. State, 620 So.2d 679, 696 (Ala.Cr.App.1992), reversed on other grounds, 620 So.2d 709 (Ala.1993), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993). See also Fisher v. State, 587 So.2d 1027, 1036 (Ala.Cr.App.), cert. denied, 587 So.2d 1039 (Ala.1991), cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992).
Because the record does not raise any inference that the prosecutor engaged in purposeful discrimination in his use of peremptory challenges, we find no plain error regarding this issue. Rieber, supra.

X
The appellant's tenth argument is that the prosecutor misled the jury about what codefendant Stephen Brookshire had to gain from his testimony. In support thereof, he cites the prosecutor's representation that "nothing could have happened" to Brookshire if he had refused to testify against the appellant. Because the appellant never raised this objection at trial, we must review this argument under the plain error rule. Rule 45A, Ala. R.App. P.
During Brookshire's testimony, the following exchange occurred:

*224 "PROSECUTOR: You agreed to testify as a witness in this case, didn't you?
"BROOKSHIRE: Yes, sir.
"PROSECUTOR: And because of that, there was an agreement made between the State and your attorney and yourself, was there not?
"BROOKSHIRE: Yes, sir.
"PROSECUTOR: What was that agreement?
"BROOKSHIRE: Twenty-five years.
"PROSECUTOR: You would plead guilty?
"BROOKSHIRE: That I would plead guilty to a lesser murder charge.
"PROSECUTOR: You would plead guilty to murder itself, wouldn't you?
"BROOKSHIRE: Yes, sir.
"PROSECUTOR: You would receive a penitentiary sentence of 25 years?
"BROOKSHIRE: Yes, sir.
"PROSECUTOR: And that's the agreement that you have with the State?
"BROOKSHIRE: Yes, sir.
"PROSECUTOR: And you are testifying of what you have told police officers all along in order to obtain that agreement?
"BROOKSHIRE: Yes, sir.
"PROSECUTOR: You knew you didn't have to take the witness stand, didn't you?
"BROOKSHIRE: That's right.
"PROSECUTOR: You could have refused and nothing could have happened to you?
"BROOKSHIRE: Yes, sir."
From the above testimony, it is clear that Brookshire was initially charged with a more serious crime than murder and that he made a deal to plead guilty to the lesser included offense of murder. As part of that deal, Brookshire agreed to testify for the State. The prosecutor correctly pointed out that the State could not have forced Brookshire to testify. Instead, Brookshire agreed to testify so he could obtain the State's agreement to allow him to plead guilty to a lesser offense. Further, on cross-examination, defense counsel again pointed out the deal Brookshire had made with the State and also had Brookshire testify that he would be serving the time in a prison outside Alabama. Taken in context, the prosecutor's comment was entirely appropriate and did not misrepresent the State's deal with Brookshire.

XI
The appellant's eleventh argument is that the trial court erred in denying his application for treatment as a youthful offender and in compelling him to proceed at that stage of the proceeding with an attorney who did not want to represent him. First, he contends that the trial court improperly refused to conduct a hearing on his application for treatment as a youthful offender and that it improperly denied the application based solely upon the nature of the offense. In denying the appellant's application, the trial court stated as follows:
"The Court normally, under circumstances of application for youthful offender, sets it down for a hearing to determine that status. As I understand the law, the Court cannot consider the facts of the charge with which you are charged. But the Court, as I understand the law, can consider the offense itself. Under these circumstances and under the charge with which you are charged, youthful offender status is denied."

(Emphasis supplied.) The trial court has almost absolute discretion in deciding whether to grant or to deny a defendant treatment as a youthful offender, and that decision will not be overturned absent an affirmative showing that the decision was arbitrary or was made without some investigation or examination of the defendant. Burks v. State, 600 So.2d 374 (Ala.Cr.App. 1991); Barnett v. State, 348 So.2d 512 (Ala.Cr.App.), cert. denied, 351 So.2d 571 (Ala.1977). The trial court is not required *225 to turn each case over to a probation officer for an investigation and is not required to conduct a formal hearing in every case. Burks, supra; Arrington v. State, 513 So.2d 40 (Ala.Cr.App.1987). All that is required is that the trial court undertake an examination of the defendant sufficient to enable it to make an intelligent determination as to whether, in its discretion, the defendant is eligible for treatment as a youthful offender. Burks, supra. Finally, the trial court may consider the nature of the facts of the particular case in denying an application for treatment as a youthful offender. Fields v. State, 644 So.2d 1322 (Ala.Cr.App.1994). Although the trial court did not conduct a formal evidentiary hearing on the appellant's application for treatment as a youthful offender, the court clearly indicated that it considered the circumstances of the case as well as the charge itself in denying the application. Because the facts of this case are extremely serious, the trial court did not abuse its discretion in denying the appellant's request for treatment as a youthful offender. Barnett, supra. Even though the appellant did not have a significant criminal record, the trial court's decision is justified based upon the circumstances of the case and the offense charged. Thus, the trial court did not err in denying the appellant's application for treatment as a youthful offender.
The appellant further contends that the trial court erred in forcing him to proceed on his application for treatment as a youthful offender with a lawyer who did not want to represent him. The attorney moved to withdraw as counsel, indicating that he thought there might be a conflict of interest because he was a close friend of the victim and the victim's family members and because he had worked with officers from the Albertville Police Department on many occasions. The trial court asked the attorney to represent the appellant on his application for treatment as a youthful offender, and it indicated that it would consider his motion to withdraw as counsel following those proceedings. At that time, the appellant told the trial court he had thoroughly reviewed the application for treatment as a youthful offender with his attorney and that he understood the application. In addition, the trial court reviewed the application with the appellant and explained the rights he would be giving up and the possible punishment that might be imposed if he was granted youthful offender status. Thus, the appellant was not prejudiced when this lawyer represented him in the proceedings on his application for treatment as a youthful offender.

XII
The appellant's twelfth argument is that his statement was obtained unconstitutionally and was erroneously introduced into evidence over his objection. Specifically, he contends that he was illegally arrested without a warrant and that he gave his statement involuntarily. Under Rule 4.1(a)(1)(i), Ala. R.Crim. P., a police officer may arrest a person without a warrant if he has probable cause to believe a felony has been committed and that the person to be arrested committed it. Based upon statements the appellant made to friends following the crime, the reports officers received from the appellant's friends, and the officers' recovery of the appellant's jacket and hat, the officers had probable cause to arrest the appellant for Whitten's murder without a warrant. Thus, the appellant's argument that he was illegally arrested without a warrant is without merit. Scarbrough v. State, 621 So.2d 996 (Ala.Cr.App.1992), aff'd, 621 So.2d 1006 (Ala.1993).
The appellant also contends that he gave his statement involuntarily. Although extrajudicial confessions are prima facie involuntary, this court discussed the showing necessary for a trial court to determine whether a confession is voluntary in Johnson v. State:
"`For a confession to be admissible, the state must present evidence that the *226 defendant was informed of his Miranda rights and that the confession was voluntarily given.' Mann v. State, 581 So.2d 22, 23 (Ala.Cr.App.1991)."
680 So.2d 1005, 1007 (Ala.Cr.App.1996).
"`In determining whether a confession is voluntary, the trial court's finding of voluntariness need only be supported by a preponderance of the evidence. Seawright v. State, 479 So.2d 1362 (Ala.Cr.App.1985). The trial court's decision will not be disturbed on appeal unless it is manifestly contrary to the great weight of the evidence. "`The test for the voluntary nature of an extrajudicial confession or inculpatory statement is whether in light of all the surrounding circumstances, the statement was free from inducement, threat or promise, either expressed or implied, which would have produced in the mind of the accused any fear of harm or hope of favor.'" Seawright, 479 So.2d at 1367, citing Rogers v. State, 365 So.2d 322 (Ala.Cr.App.), cert. denied, 365 So.2d 334 (Ala.1978).'

"Dixon v. State, 588 So.2d 903, 907 (Ala. 1991)."
Howard v. State, 678 So.2d 302, 306 (Ala. Cr.App.1996).
"`[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court. Absent a gross abuse of discretion, a trial court's resolution of this conflict should not be reversed on appeal.'"
Johnson v. State, 680 So.2d 1005, 1007 (Ala.Cr.App.1996) (quoting Sheely v. State, 629 So.2d 23, 29 (Ala.Cr.App.1993)); see also Howard v. State, 678 So.2d 302 (Ala. Cr.App.1996). Finally, this court's standard for reviewing a ruling on a motion to suppress has been stated as follows:
"`"In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court."' Kennedy v. State, 640 So.2d 22, 26 (Ala.Cr.App.1993), quoting Bradley v. State, 494 So.2d 750, 761 (Ala.Cr. App.1985), aff'd, 494 So.2d 772 (Ala. 1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). A trial court's ruling on a motion to suppress will not be disturbed unless it is `palpably contrary to the great weight of the evidence.' Parker v. State, 587 So.2d 1072, 1088 (Ala.Cr.App.1991)."
Rutledge v. State, 680 So.2d 997, 1002 (Ala. Cr.App.1996).
The officers laid a proper predicate for the admission of the appellant's confession. Testimony presented by the State at the suppression hearing showed that the appellant was arrested between 12:30 p.m. and 1:00 p.m. on January 26, 1995, and that he was immediately taken to the police station. He was advised of his Miranda rights, including his juvenile Miranda rights, within 10 or 15 minutes after he was arrested, and he signed the waiver of rights form in two places, including the waiver portion. He was questioned for approximately one hour and was then taken to the Albertville city jail. At approximately 10:00 that evening, a district judge again advised the appellant of his rights and appointed an attorney to represent him. At that time, the appellant specifically asked to speak to Detectives James Maze and Tommy Cole. The detectives reminded him of his rights and asked if he would like to speak to his attorney. The appellant stated that that would not be necessary and he then gave his statement. The officers testified that the appellant was at all times coherent and that he did not appear to be under the influence of drugs or alcohol at the time. They also testified that they did not threaten or coerce the appellant into making a statement. It is clear that the trial court properly considered the totality of the circumstances and correctly determined that the appellant voluntarily gave his confession to the police officers. Therefore, the trial *227 court did not err in admitting the appellant's confession into evidence.

XIII
The appellant's thirteenth argument is that the prosecution engaged in repeated acts of misconduct in an effort to secure a capital conviction and sentence of death in this case.

A
First, he contends that the State sought to elicit information about pecuniary gain which was not at issue in this case and about which it had been ordered not to present evidence. However, the trial court did not rule on the appellant's motion in limine asking that the State be prevented from offering evidence that the crime was committed for pecuniary gain. Instead, it indicated that it would rule on that issue during the trial should the need arise. During the trial, the State asked one witness, Christy Clark, whether she had heard Larry Whitehead talk about having a big lawsuit against Hudson Foods. When she indicated that she had, the State asked if she had heard Whitehead mention the lawsuit or money to Brookshire or the appellant, to which she responded that she had not. This testimony was not offered to show that the appellant murdered Whitten for pecuniary gain. Instead, it was offered to show one of Whitehead's motives for instigating the murder. The appellant did not object when the State asked these questions. In fact, the defense waited until the afternoon of the following day to move for a mistrial based on this testimony. The trial court denied the motion, finding specifically that there was no indication that the appellant and Brookshire knew about any lawsuit Whitehead planned to file.
"A high degree of necessity for the granting of a mistrial must be demonstrated before one should be granted. Woods v. State, 367 So.2d 982 (Ala.1978). A trial judge is allowed the exercise of broad discretion in deciding whether that high degree of necessity is present. Id. The entry of a mistrial should be a last resort as in cases of otherwise ineradicable prejudice. Leverett v. State, 462 So.2d 972, cert. denied, 462 So.2d 972 (Ala.Cr.App.1984). When improper statements are made which are eradicable, prompt action by the trial court, impressing upon the jury the importance of not considering the improper matters, removes any prejudicial effect. Id."

McMillian v. State, 594 So.2d 1253, 1267-68 (Ala.Cr.App.1991). From our review of the evidence, we conclude that the trial court did not err in refusing to grant the appellant's motion for a mistrial.

B
Second, the appellant contends that the prosecution relied upon improper evidence in securing a capital conviction and sentence of death. Specifically, he argues that the prosecutor improperly read into evidence the transcript of the appellant's confession instead of playing the tape for the jury, asked leading questions, and impeached his own witness. The tape of the appellant's confession was admitted and was available for the jurors to hear. Therefore, the prosecution did not act improperly in reading portions of the confession into evidence. His contention that the prosecution improperly led and impeached its own witnesses is likewise without merit. Although the State asked some leading questions, those questions did not prejudice the appellant. Also, the State did not actually impeach its witness. And, even if it had, it would have been proper under Rule 607, Ala. R. Evid. Viewing these alleged errors in the context of the entire trial and not in isolation, we find that they did not affect the fairness and integrity of the trial and did not have an unfair prejudicial impact on the jury's deliberations. Bankhead v. State, 585 So.2d 97, 106 (Ala.Cr.App.1989), aff'd in relevant part, remanded on other grounds, 585 So.2d 112, 127 (Ala.1991), aff'd on return *228 to remand, 625 So.2d 1141 (Ala.Cr. App.1992).

C
Third, the appellant contends that the district attorney misstated the law and otherwise misled the veniremembers. The prosecutor's questions to veniremembers about whether they would be able to recommend a death sentence if the defendant was a teenager were wholly appropriate in death-qualifying the jurors. Wainwright v. Witt, 469 U.S. 810, 105 S.Ct. 70, 83 L.Ed.2d 20 (1984); Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Furthermore, the trial court instructed the jurors that the statements of the attorneys were not evidence to be considered in the case. Therefore, this argument is without merit.

D
Fourth, the appellant contends that the State's arguments to the jury and to the court were highly improper. Specifically, he argues that the State emphasized that the decision was important to the law enforcement community, that the State vouched for its witnesses, and that the State told the jurors they owed a duty to the government to punish the appellant with death. Because the appellant did not raise these objections at trial, we must review them under the plain error rule. Rule 45A, Ala. R.App. P.
Although the prosecutor's arguments, when examined in isolation, may seem improper, they were not improper when read in the context of the entire trial and with an understanding that they were simply arguments and not evidence. The trial court instructed the jury that statements by the attorneys were not evidence and that it should make its decision based upon the evidence presented during the proceedings. A jury is presumed to follow the instructions given by the trial court. Taylor v. State, 666 So.2d 36 (Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996). Further, we must evaluate the allegedly improper comments in the context of the entire proceeding. Duren v. State, 590 So.2d 360 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala.1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992). "`In judging a prosecutor's closing argument, the standard is whether the argument so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).
"In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App.1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App. 1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App.1980), cert. denied, 404 So.2d 100 (Ala.1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App. 1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App.1982)...."
Bankhead v. State, 585 So.2d 97, 106 (Ala. Cr.App.1989), aff'd in relevant part, remanded on other grounds, 585 So.2d 112, 127 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Cr.App.1992).
"`During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.' Rutledge v. State, 523 So.2d 1087, 1100 (Ala. Cr.App.1987), rev'd on other grounds, *229 523 So.2d 1118 (Ala.1988) (citation omitted). Wide discretion is allowed the trial court in regulating the arguments of counsel. Racine v. State, 290 Ala. 225, 275 So.2d 655 (1973). `In evaluating allegedly prejudicial remarks by the prosecutor in closing argument, ... each case must be judged on its own merits,' Hooks v. State, 534 So.2d 329, 354 (Ala. Cr.App.1987), aff'd, 534 So.2d 371 (Ala. 1989), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989) (citations omitted) (quoting Barnett v. State, 52 Ala.App. 260, 264, 291 So.2d 353, 357 (1974)), and the remarks must be evaluated in the context of the whole trial, Duren v. State, 590 So.2d 360 (Ala.Cr. App.1990), aff'd, 590 So.2d 369 (Ala. 1991). `In order to constitute reversible error, improper argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury.' Mitchell v. State, 480 So.2d 1254, 1257-58 (Ala.Cr.App.1985) (citations omitted). `To justify reversal because of an attorney's argument to the jury, this court must conclude that substantial prejudice has resulted.' Twilley v. State, 472 So.2d 1130, 1139 (Ala.Cr. App.1985) (citations omitted)."
Coral v. State, 628 So.2d 954, 985, aff'd, 628 So.2d 954 (Ala.Cr.App.1992), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994). The appellant has alleged several instances of prosecutorial misconduct. However, he has not shown that the alleged instances of misconduct, taken separately or collectively, rose to the level of plain error and deprived him of a fair trial. Finally, we note that the trial court is presumed to know the law and to disregard any improper comments or evidence in sentencing. Sockwell, supra; Lightbourne, supra; Whisenhant, supra. Viewed in the context of the entire trial, the alleged instances of misconduct, even if they constituted misconduct, did not so infect the trial with unfairness as to make the resulting sentence a denial of due process. In fact, the jury recommended a sentence of life imprisonment without the possibility of parole, not death. Therefore, this issue is without merit.

XIV
The appellant's fourteenth argument is that the trial court erred by granting the State's challenges for cause to veniremembers C.C., W.H., and B.H. He further argues that the court erred by denying his challenge for cause to veniremember H.N.
"`Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. Tidmore v. City of Birmingham, 356 So.2d 231 (Ala.Cr.App.1977), cert. denied, 356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132 (1978); see Mahan v. State, 508 So.2d 1180 (Ala.Cr.App.1986). This determination, again, is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence.'

"Knop v. McCain, 561 So.2d 229, 232 (Ala.1989). See also Jenkins v. State, 627 So.2d 1034, 1043 (Ala.Cr.App.1992)."
Ex parte Windsor, 683 So.2d 1042, 1047 (Ala.1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997) (emphasis added).
"`"The proper standard for determining whether a prospective juror may be excluded for cause because of his or her views on capital punishment is `whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."' Wainwright v. Witt, 469 U.S. 412 [424], 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); Gray v. Mississippi, *230 481 U.S. 648 [at 657-58], 107 S.Ct. 2045, 2051, 95 L.Ed.2d 622 (1987). `The crucial inquiry is whether the venireman could follow the court's instructions and obey his oath, notwithstanding his views on capital punishment.' Dutton v. Brown, 812 F.2d 593, 595 (10th Cir.), cert. denied, Dutton v. Maynard, 484 U.S. 836, 108 S.Ct. 116, 98 L.Ed.2d 74 (1987). A juror's bias need not be proved with `unmistakable clarity' because `juror bias cannot be reduced to question and answer sessions which obtain results in the manner of a catechism.' Id.

"`"A trial judge's finding on whether or not a particular juror is biased `is based upon determination of demeanor and credibility that are peculiarly within a trial judge's province.' Witt, 469 U.S. at 429, 105 S.Ct. at 855. That finding must be accorded proper deference on appeal. Id. `A trial court's rulings on challenges for cause based on bias [are] entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion.' Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, Ex parte Nobis, 401 So.2d 204 (Ala.1981)."
"`Martin v. State, 548 So.2d 488, 490-91 (Ala.Cr.App.1988), affirmed, 548 So.2d 496 (Ala.1989), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). "[A] blanket declaration of support of or opposition to the death penalty is not necessary for a trial judges to disqualify a juror." Ex parte Whisenhant, 555 So.2d 235, 241 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).'"
Dallas v. State, 711 So.2d 1101 (Ala.Cr. App.1997) (quoting Taylor v. State, 666 So.2d 36, 47 (Ala.Cr.App.1994)).
During voir dire, C.C. initially stated that she did not believe in the death penalty. After all of the panels were questioned, several veniremembers, including C.C., were questioned individually. At that time, she indicated once again that she did not believe in the death penalty. However, C.C. then stated that she could vote to impose the death penalty. Considering C.C.'s prior responses regarding the imposition of the death penalty, together with her apparent sudden change of mind, it appears that the trial court was unsure that her statement that she could vote to impose the death penalty was candid. Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); Dallas, supra. A juror's bias need not be proved with "unmistakable clarity" because "juror bias cannot be reduced to question and answer sessions which obtain results in the manner of a catechism." Id. Therefore, the trial court did not err in dismissing C.C. for cause.
The record does not show the specific reason W.H. was removed from the jury. However, when the trial court dismissed W.H., defense counsel did not object. Thus, we must review his removal under the plain error rule. Rule 45A, Ala. R.App. P. During voir dire, W.H. indicated that he was not against the death penalty, but that he would be "hard put" to recommend it. After some reflection, however, W.H. responded to a question from the prosecution by saying, "I don't believe I could do it [vote for the death penalty]. I'll just be honest with you." He also equivocated when answering additional questions regarding his feelings about the death penalty. Even when he was given two hypothetical situations, one that involved a child-killer and another that involved a mass murderer, W.H. could not affirmatively state that he could vote to impose the death penalty. Therefore, the trial court properly dismissed W.H. for cause pursuant to Wainwright v. Witt, 469 U.S. 412, 419, 105 S.Ct. 844, 849, 83 L.Ed.2d 841 (1985).
During voir dire, B.H. stated that he would have difficulty imposing the death penalty. Individual questioning *231 showed that B.H.'s reservations concerning capital punishment were colored by the fact that he had a 15-year-old son and the fact that the defendant was also a teenager. It appears that B.H. was struck because he indicated that he could not, under the facts of this case, vote to impose the death penalty. It further appears that the trial court inadvertently communicated to B.H. that the prosecution wanted him removed from the jury and that this was another reason the trial court dismissed him for cause. Because of B.H.'s equivocation about imposing the death penalty, the trial court properly dismissed B.H. for cause. Wainwright v. Witt, 469 U.S. 412, 419, 105 S.Ct. 844, 849, 83 L.Ed.2d 841 (1985).
The appellant also argues that the trial court erred by refusing to dismiss veniremember H.N. from the jury because he expressed the belief that the killing of a policeman was a more serious offense than the killing of a civilian. Although H.N. indicated that he could not set aside his feelings, he stated that he could follow the court's instructions and that he would disregard any personal feelings he might have that were contrary to the court's instructions. Therefore, the court properly refused to dismiss H.N. for cause.

XV
The appellant's fifteenth argument is that the trial court erroneously denied his motion for a change of venue. He contends that Whitten's murder drew unprecedented media attention to Marshall County, and he presented newspaper articles published about the murder to the trial court in support of his motion. He argues that Whitten was a member of the county's best-known law enforcement family and that Whitten himself was well-respected. The appellant further claims that the arrests relating to Whitten's murder inflamed the local passions that were already aroused by this case, making a fair trial in Marshall County impossible. Finally, he claims the fact that Whitehead's attorney was granted a change of venue to Calhoun County, where he was acquitted, illustrates the fundamental unfairness of requiring him to be tried in Marshall County. We disagree.
The publicity in Holladay v. State, 549 So.2d 122 (Ala.Cr.App.1988), aff'd, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989), was even more pervasive than that in this case. In Holladay, extensive and widespread media publicity surrounded the case as soon as it began. In August 1986, Holladay shot and killed his former wife and two of her friends. Holladay remained at large until October 9, 1986, when he was shot and captured by a deputy in Florida. All of these facts were widely reported by the media. Voir dire in that case reflected that nearly every veniremember had some knowledge of the case. Holladay argued in pretrial motions that the members of the community were so afraid of him that he could not receive a fair trial and that venue should be transferred to another county.
In affirming Holladay's conviction, we stated:
"`A defendant is entitled to a change of venue if he can demonstrate to the trial court that he cannot receive a fair and impartial trial in the county where he is to be tried. Ala.Code, ง 15-2-20 (1975); Nelson v. State, 440 So.2d 1130, cert. denied, 440 So.2d 1130 (Ala.Cr.App. 1983); Anderson v. State, 362 So.2d 1296 (Ala.Crim.App.1978).
"`"There are two situations in which a change of venue is mandated. The first is when the defendant can show that prejudicial pre-trial publicity `has so saturated the community as to have a probable impact on the prospective jurors' and thus renders the trial setting `inherently suspect.' McWilliams v. United States, 394 F.2d 41 (8th Cir.1968); Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In this situation, a `pattern of deep and bitter *232 prejudice' must exist in the community. Irvin v. Dowd, [366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)] supra.
"`"The second situation occurs when the defendant shows `a connection between the publicity generated by the news articles, radio and television broadcasts and the existence of actual jury prejudice.' McWilliams v. United States, supra."
"`Nelson, 440 So.2d at 1131-32.'

"Thomas v. State, 539 So.2d 375 (Ala. Cr.App.1988). See also Robinson v. State, 430 So.2d 883 (Ala.Cr.App. 1983)."
". . . .
"[W]e do not believe that the appellant has shown actual jury prejudice as a result of the alleged pre-trial publicity.
"The way to demonstrate actual jury prejudice is through an extensive and thorough voir dire examination. Anderson. There is no question that the voir dire examination in the case at bar was both thorough and extensive as to each prospective juror's knowledge of and feelings about this case. The fact that virtually every prospective juror had some knowledge of the appellant's case does not mean the appellant could not receive a fair and impartial trial. See Thomas. Merely because these jurors were not totally ignorant of the facts and issues in this case, does not mean they were unable to render a fair and unbiased verdict. Anderson."

549 So.2d at 125-26.
The appellant has not shown the existence of any actual prejudice and has not shown that the community was so saturated with prejudicial publicity that he could not have received a fair hearing. The attorneys conducted extensive voir dire, specifically concerning pretrial publicity about the case. Although many of the jurors indicated that they knew about the case, there was no indication that any of them were biased against the appellant. Thus, the appellant has not shown that any of the pretrial publicity biased any of the prospective jurors. Rather, he has simply made bare allegations that there was prejudicial pretrial publicity and that this publicity biased the jurors. Because the appellant did not show that he could not receive a fair trial in Marshall County, the trial court properly denied his motion for a change of venue.

XVI
The appellant's sixteenth argument is that the trial court erred by denying his motion for individually sequestered voir dire.
"`A trial court is vested with great discretion in determining how voir dire examination will be conducted, and that court's decision on how extensive a voir dire examination is required will not be overturned except for an abuse of that discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973); Lane v. State, 644 So.2d 1318 (Ala.Cr.App.1994); Harris v. State, 632 So.2d 503 (Ala.Cr.App. 1992), affirmed, 632 So.2d 543 (Ala. 1993), affirmed, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). After reviewing the record, we conclude that the trial court did not abuse its discretion in this regard.

"Ex parte Land, 678 So.2d at 242 [(Ala. 1996)].
"In Haney [v. State, 603 So.2d 368 (Ala.Cr.App.1991) ], this court addressed a claim similar to the one raised by the appellant as follows:
"`"Appellant contends that the trial court erred in failing to grant individually sequestered voir dire of the jury venire. The trial court did permit individual voir dire in several instances but otherwise the jurors were questioned by panels. As a general rule, the decision whether to voir dire prospective jurors individually or collectively is within the sound discretion of the trial court. Waldrop v. State, 462 *233 So.2d 1021 (Ala.Cr.App.1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985). This discretion is limited, however, by the requirements of due process. United States v. Hawkins, 658 F.2d 279 (5th Cir.1981); Waldrop v. State. Individual questioning may be necessary under some circumstances to ensure that all prejudice has been exposed. United States v. Hurley, 746 F.2d 725 (11th Cir. 1984). We have reviewed the record of the voir dire examinations and the entire jury selection procedure in this case and find that the method of empaneling the jury provided reasonable assurance that prejudice would have been discovered if present. We find no abuse of discretion in the trial court's handling of the empaneling of this jury.'
"603 So.2d at 402.
"`Even in capital cases, there is no requirement that a defendant be allowed to question each perspective juror individually during voir dire examination.' Hallford v. State, 548 So.2d 526, 538 (Ala.Cr.App.), aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). See also Taylor v. State, 666 So.2d 36 (Ala.Cr.App.1994), aff'd, on remand, 666 So.2d 71 (Ala.Cr. App.1994), aff'd, 666 So.2d 73 (Ala. 1995)."
Stewart v. State, 730 So.2d 1203, 1242-43 (Ala.Cr.App.1997).
The trial court separated the venire into panels of approximately 14 members. The attorneys questioned each panel individually. And, when they asked personal questions, any panel member responding to the question was allowed to approach the bench and state his or her answer to the judge and the attorneys outside of the hearing of other panel members. Further, the trial court allowed the attorneys to question some veniremembers individually based on their answers to questions during the examination of the panels. This method of empaneling and questioning the jury reasonably assured that prejudice, if present, would have been discovered. Haney, supra. Therefore, the trial court did not abuse its discretion in refusing to conduct individually sequestered voir dire.

XVII
The appellant's seventeenth argument is that the trial court erroneously denied his motion for a continuance based on his lead attorney's ill health and what he considered vital new evidence discovered during the trial. The appellant repeatedly requested a continuance because his lead counsel was recovering from some health problems. The record shows that the trial was continued at defense counsel's request at least two times, one of which was based upon the lead attorney's ill health. Moreover, lead counsel was appointed to represent the appellant approximately one year before the trial began, and he thus had sufficient time to prepare the appellant's defense. Although lead counsel's voice may have been affected by his health problems, there is no indication in the record that he was absent from any portion of the trial due to his health problems. In fact, his attorneys were both well prepared and ably and skillfully represented the appellant throughout the trial.
Furthermore, when the defense was informed, during the trial, that Larry Whitehead wanted to testify that heโnot the appellantโhad shot Whitten, defense counsel requested additional time to review Whitehead's statement and to reconsider the evidence he wished to present. The trial court denied the request for a continuance. However, it did grant a four-hour recess immediately after the new evidence was discovered so that the defense could review and ascertain how best to use the new evidence. Finally, the State was still presenting its case-in-chief when this new evidence was discovered.
The decision whether to grant or deny a motion for a continuance is committed *234 to the sound discretion of the trial court, and such a decision will not be reversed absent a clear showing that the trial court abused its discretion. Smith v. State, 698 So.2d 189 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997); Burrell v. State, 689 So.2d 992 (Ala.Cr.App.1996); Grimsley v. State, 678 So.2d 1197 (Ala.Cr.App.1996). From the foregoing, it is clear that the trial court did not abuse its discretion in refusing to continue the trial based on either lead counsel's health problems or the discovery of new evidence during the trial.

XVIII
The appellant's eighteenth contention is that the trial court erred in refusing to sequester the jury without first obtaining his consent to the separation. Specifically, he argues that Rule 19.3(a)(1), Ala. R.Crim. P., takes precedence over ง 12-16-9, Ala.Code 1975, and that, therefore, the trial court erred in unilaterally deciding to allow the jurors to separate during the pendency of his trial. We recently addressed this issue and decided it adversely to the appellant in Stewart v. State, 730 So.2d 1203 (Ala.Cr.App.1997). Therefore, this argument is without merit.

XIX
The appellant's nineteenth contention is that the trial court improperly denied his motion for what he considered was adequate and reasonable compensation for his attorneys. Section 15-12-21(d), Ala. Code 1975, limits court-appointed attorney fees to $1,000 for out-of-court work in a capital trial, based on a $20 hourly rate. He contends that this limitation on compensation violates the separation of powers doctrine, constitutes a taking without just compensation, violates due process, deprives indigent capital defendants of effective assistance of counsel, and denies equal protection in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama state law. These claims have previously been addressed and decided adversely to the appellant. Stewart v. State, 730 So.2d 1203 (Ala.Cr.App.1997); Ex parte Smith, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997); Boyd v. State, 715 So.2d 825 (Ala.Cr.App. 1997); Slaton v. State, 680 So.2d 879 (Ala. Cr.App.1995), aff'd, 680 So.2d 909 (Ala. 1996), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); May v. State, 672 So.2d 1310 (Ala.1995); Barbour v. State, 673 So.2d 461 (Ala.Cr.App.1994), aff'd, 673 So.2d 473 (Ala.1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996); Johnson v. State, 620 So.2d 679 (Ala.Cr.App.1992), rev'd on other grounds, 620 So.2d 709 (Ala.1993), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993); Smith v. State, 581 So.2d 497 (Ala.Cr.App.1990), rev'd on other grounds, 581 So.2d 531 (Ala.1991); Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985); Sparks v. Parker, 368 So.2d 528 (Ala.), appeal dismissed, 444 U.S. 803, 100 S.Ct. 22, 62 L.Ed.2d 16 (1979).
Moreover, the statute provides that counsel shall be paid for all hours spend in-court and shall be reimbursed for any expenses reasonably incurred as long as the trial court approves them in advance. Therefore, the appellant's contentions are without merit.

XX
The appellant's twentieth argument is that the trial court erred in allowing allegedly inflammatory or cumulative photographs into evidence. However, he did not object when the photographs were admitted into evidence. Therefore, we must review this issue for under the plain error rule.
"`Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant *235 fact or evidence, or to corroborate or dispute other evidence in the case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence.... Finally photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.'"
Gaddy v. State, 698 So.2d 1100, 1148 (Ala. Cr.App.1995), aff'd, 698 So.2d 1150 (Ala. 1997) (quoting Ex parte Siebert, 555 So.2d 780, 783-84 (Ala.1989)). Furthermore, photographs that depict the crime scene are relevant and therefore admissible. Aultman v. State, 621 So.2d 353 (Ala.Cr. App.1992), cert. denied, 510 U.S. 954, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993); Ex parte Siebert, 555 So.2d 780, 783-84 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); Hill v. State, 516 So.2d 876 (Ala.Cr.App.1987). Finally, photographs may be admissible even if they are cumulative or demonstrate undisputed facts. Stanton v. State, 648 So.2d 638 (Ala.Cr.App.1994); Hopkins v. State, 429 So.2d 1146, 1157 (Ala.Cr.App. 1983).
The photographs admitted in this case show various portions of Whitten's house. They illustrate the layout of the house, both inside and outside, and depict the crime scene, including the location where the bullet was shot through the door. Thus, they were particularly relevant to the burglary/murder issue and to the appellant's contention that he did not "enter" Whitten's house as defined in the burglary/murder statute. Although a few photographs showed small amounts of blood found on the carpet and on a shirt, they certainly were not gruesome or inflammatory. Finally, none of the photographs depicted Whitten's body. Therefore, we find no error in the trial court's admission of the photographs into evidence.

XXI
The appellant's twenty-first argument is that he was entitled to two lawyers who had at least the minimum statutory requirement of five years of experience in criminal litigation. Specifically, he argues that David Roadruck, one of his court-appointed attorneys, did not have five years of experience in the active practice of criminal law. Section 13A-5-54, Ala.Code 1975, provides:
"Each person indicted for an offense punishable under the provisions of this article who is not able to afford legal counsel must be provided with court appointed counsel having no less than five years' prior experience in the active practice of criminal law."
The record indicates that the appellant's lead counsel, Terry Huffstutler, had over 30 years of experience in the active practice of criminal law at the time of the trial. Furthermore, the trial court noted during the argument on this issue that Huffstutler specifically requested that Roadruck be appointed as co-counsel. Finally, Roadruck stated that he had practiced law for nine years and that he practiced criminal law for approximately 4ฝ years of those nine years. We have previously held that a defendant receives the counsel to which he is entitled under ง 13A-5-54, Ala.Code 1975, if at least one of his appointed attorneys has a minimum of five years of experience in the active practice of criminal law. Parker v. State, 587 So.2d 1072, 1103 (Ala.Cr.App.1991). Accordingly, the appellant was not entitled to be represented by two lawyers who had at least five years of experience in the active practice of criminal law. Because Huffstutler had more than five years of experience in the active practice of criminal law, the appellant received the counsel to which he was entitled under ง 13A-5-54, Ala.Code 1975.

XXII
The appellant's twenty-second argument is that the trial court erred in refusing to allow his attorneys to make their opening statement at the end of the State's case. When the appellant asked to *236 be allowed to postpone his opening argument until after the State presented its case, the State objected and the trial court denied the motion. The appellant argues that he should have been allowed to delay his opening statement so he could determine whether the State had a viable case on each element of each count before he undertook his defense strategy, so he would know which elements to challenge in presenting his defense, and so he could argue that the State had failed to meet its burden on certain issues. This argument is without merit.
Rule 19.1, Ala. R.Crim. P., provides, in pertinent part, as follows:
"The trial shall proceed in the following order unless with agreement of the parties the court shall direct otherwise:
". . . .
"(c) The district attorney may make an opening statement, including a statement of what the state expects the evidence to show.
"(d) The defendant may then make an opening statement, including a statement of what the defendant expects the evidence to show. The district attorney may be permitted a brief statement in rebuttal, in the court's discretion....
"(e) The district attorney shall offer evidence in support of the charge.
"(f) The defendant may then offer evidence in defense."
"(g) Evidence in rebuttal may then be offered."
Clearly, the parties did not agree that the appellant should be allowed to make his opening statement at the end of the State's case. The trial court has discretion in scheduling a trial and in determining courtroom procedure as long as the exercise of that discretion does not result in the denial of a defendant's basic constitutional right. Ephraim v. State, 627 So.2d 1102, 1105 (Ala.Cr.App.1993). The appellant had sufficient time to tailor his defense strategy after the State presented its case-in-chief. Further, he could have presented any arguments concerning the sufficiency of the State's evidence during closing arguments. The appellant thus was not denied the right to present those arguments or otherwise prepare his defense. Therefore, because the appellant's constitutional rights were not violated, the trial court did not abuse its discretion in refusing to allow his attorneys to make their opening statement at the end of the State's case.

XXIII
Pursuant to ง 13A-5-53, Ala.Code 1975, we must address the propriety of the appellant's conviction and sentence of death. The appellant was indicted for and was convicted of capital murder because the murder was committed during the course of a burglary, ง 13A-5-40(a)(4), Ala.Code 1975, and because the victim had been a grand jury witness and had been subpoenaed to testify at Whitehead's trial, ง 13A-5-40(a)(14), Ala.Code 1975. The trial court overrode the jury's recommendation of a sentence of life imprisonment without parole and imposed a sentence of death.
The record does not show that the sentence of death was imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. ง 13A-5-53(b)(1), Ala.Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court found two aggravating factors: 1) the murder was committed while the appellant was engaged in a burglary, ง 13A-5-49(4), and 2) the offense was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws, ง 13A-5-49(7), Ala.Code 1975. The trial court found the following statutory mitigating circumstances: 1) the defendant has no significant history of prior criminal activity, ง 13A-5-51(1); 2) although the court found that the defendant did not act under extreme duress nor under the substantial *237 domination of another person, it did find that he acted under the encouragement and influence of Larry Whitehead; and 3) the defendant was seventeen years old at the time of the crime, ง 13A-5-51(7), Ala.Code 1975. The trial court also found as a nonstatutory mitigating circumstance the defendant's difficult background and family history. The trial court stated in its sentencing order that it considered the other evidence offered by the appellant as mitigation. The trial court's findings show that it weighed the aggravating circumstances and the mitigating circumstances and correctly sentenced the appellant to death. The trial court's decision is supported by the record, and we agree with that court's findings.
Section 13A-5-53(b)(2) requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant's sentence of death. After independently weighing the aggravating and mitigating circumstances, we conclude that the appellant's sentence to death by electrocution is appropriate.
As required by ง 13A-5-53(b)(3), we must determine whether the appellant's sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. Similar crimes are being punished with the imposition of the death sentence throughout this state. See, e.g., Brooks v. State, 695 So.2d 176 (Ala.Cr.App. 1996), aff'd, 695 So.2d 184 (Ala.), cert. denied, 522 U.S. 893, 118 S.Ct. 233, 139 L.Ed.2d 164 (1997); Land v. State, 678 So.2d 201 (Ala.Cr.App.), aff'd, 678 So.2d 224 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996); Barbour v. State, 673 So.2d 461 (Ala.Cr.App. 1994), aff'd, 673 So.2d 473 (Ala.1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996); Grayson v. State, 479 So.2d 69 (Ala.Cr.App.1984), aff'd, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985). Thus, we find that the sentence was neither disproportionate nor excessive.
Finally, we have searched the entire record for any error that may have adversely affected the appellant's substantial rights, and we have found none. Rule 45A, Ala. R.App. P.
Accordingly, the appellant's conviction and the sentence of death by electrocution are hereby affirmed.
AFFIRMED.
LONG, P.J., and McMILLAN and BROWN, JJ., concur.
COBB, J., recuses.
NOTES
[1] We note that the Advisory Committee's Notes to Rule 1101, Ala. R. Evid., effective January 1, 1996, state: "Traditionally, rules of evidence have been held not to govern sentencing ... proceedings except as otherwise provided by statute or rule of court. Rule 1101 ... is intended to continue that principle of inapplicability."